Stephen R. Basser (CA Bar # 121590)
Samuel M. Ward (CA Bar # 216562)
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

*Attorneys for Plaintiffs*
(Additional Counsel for Plaintiffs Appear on Signature Page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE LOZA AND LORRAINE ROMERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOBBY LOBBY STORES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**<u>CLASS ACTION COMPLAINT</u>**

1. Hobby Lobby deceives consumers into purchasing certain products through false advertising. It routinely advertises significant "discounts" on certain products, but these "discounts" never end. The so-called "sale" price is just the actual price of the item. There is no discount.

2. By advertising these permanent "discount" or "sale" prices, Hobby Lobby violates California law and the Federal Trade Commission's guidelines on discount pricing.

3. Plaintiffs Nicole Loza and Lorraine Romero are both consumers who were harmed by this practice. Each Plaintiff seeks to represent not just herself, but also a class of consumers who similarly have been impacted by Hobby Lobby's misconduct.

4. Plaintiffs bring this lawsuit for themselves and for other consumers that Hobby Lobby has harmed through this false advertising scheme.

## I. Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because Plaintiffs are citizens of a different state than Defendant, there are more than 100 Class members, and the amount in controversy for the Class exceeds $5,000,000 exclusive of costs and interest.

6. This Court has personal jurisdiction over Hobby Lobby because Hobby Lobby is authorized to do business in this district and conducts substantial business in this district, with several stores in the District.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 with respect to Hobby Lobby because Plaintiffs purchased the products sold at an allegedly discounted or sale price in this district, such that a substantial part of the events giving rise to the claim occurred in this judicial district. Additionally, Hobby Lobby has marketed, advertised, and sold the at-issue products at its stores within this District.

## II. Parties

### A. Plaintiffs

8. Plaintiff Nicole Loza is a citizen of California, who resides in South San Francisco, California, 94080. Ms. Loza purchased picture or photo frames and T-shirts at a Hobby Lobby store in San Mateo, CA in 2023 and 2024. Before purchasing her frames and T-shirts, Ms. Loza reviewed Hobby Lobby's promotional materials regarding the sale price and discounted price and relied upon these representations in her decision to purchase the frames and T-shirts.

9. Plaintiff Lorraine Romero is a citizen of California, who resides in Richmond, California, 94801. Ms. Romero purchased picture or photo frames at a Hobby Lobby store in Concord, CA in 2024. Before purchasing her frames, Ms. Romero reviewed Hobby Lobby's promotional materials regarding the sale price and discounted price and relied upon these representations in her decision to purchase the frames.

10. Defendant Hobby Lobby Stores, Inc. is a corporation organized under the laws of Oklahoma headquartered in Oklahoma City, Oklahoma and registered to do business in California. Defendant owns and operates close to 1,000 stores nationwide, including over 50 stores within California several of which are located in this District.

## III. Factual Allegations

11. Hobby Lobby publishes weekly bulletins (which it refers to as a "Weekly Ad") on its website and in its stores wherein Hobby Lobby represents significant discounts or sale prices against some "marked price" for certain products. *See* https://www.hobbylobby.com/weekly-ad.

12. Hobby Lobby knows that these practices are deceptive because it has been the subject of lawsuits and enforcement actions for these practices.

13. For example, in 2014, Hobby Lobby settled a probe by the New York Attorney General's Office into Hobby Lobby offering "never-ending" sales on framing, furniture, and home décor products for more than 52 consecutive weeks. *See* https://www.reuters.com/article/us-hobbylobby-settlement-idUSKBN0EN1MN20140612/ ("Hobby Lobby settles NY probe into alleged bogus sales, *Reuters* (June 12, 2014)).

14. Similarly, in 2017, Hobby Lobby agreed with the Attorney General of Virginia to pay a civil penalty and refrain from advertising discounts compared to "other sellers" in Virginia. *See* https://www.oag.state.va.us/consumer-protection/index.php/news/203-march-6-2017-hobby-lobby-to-change-advertising-practices-as-part-of-settlement.

15. Plaintiffs are unaware of any similar enforcement measures taken in California to cease these unfair and deceptive practices, leaving Californians exposed to – and victimized by – these practices.

16. Moreover, prior class action litigation in California concerning the unfair and deceptive "sale" practices was resolved in such a manner to allow the practices at issue to continue, leaving consumers – including Plaintiffs – exposed to the same problematic practices.

17. Hobby Lobby routinely advertises certain goods to be discounted or on sale but, in fact and contrary to Hobby Lobby's representations, such items are ***always*** at the purported discounted or sale prices. Such products will be referred to herein as the "Always Discounted Products" and include, or have included:

a. Photo frames and framed wall art (advertised at 50% off);

b. Custom picture framing services (advertised at 50% off);

c. All furniture (advertised as 30% off);

d. Party items (advertised as 50% off); and

e. T-shirts (advertised as 30% off).

18. Hobby Lobby never, or very rarely, offers the Always Discounted Products at the marked price it shows as the basis for the purported percentage discount. For example, attached as **Exhibit 1** is a collection of Hobby Lobby websites showing the 50% discount pricing for frames from 2021-2024. Every website capture shows the frames being offered at a 50% off discount and does not display the frames at the marked price.

19. Hobby Lobby publishes its bulletins, store advertisements, and online discount pricing to attract customers to Hobby Lobby's stores and Hobby Lobby's website. Hobby Lobby knows that showing prices marked at a "discounted" or "sale" price will result in more sales of the

so-called discounted or sale item. Hobby Lobby intentionally markets to play on consumers' desire to believe they have made a purchase to save money or that they are receiving a "deal."

20. However, Hobby Lobby's purported "discounts" or "sale" prices do not exist. These prices are simply the prices Hobby Lobby offers the Always Discounted Products and no basis exists for the alleged full "marked price" other than Hobby Lobby's attempts to deceive consumers (the "Fake Discount Pricing Scheme").

21. Upon information and belief, no Hobby Lobby outlet in California or online routinely, if at all, offers the Always Discounted Products at the "marked price" listed by Hobby Lobby. The discounts or sale prices are purely a figment of Hobby Lobby's own creation to dupe consumers into purchasing the Always Discounted Products.

22. Plaintiffs have purchased Always Discounted Products at Hobby Lobby's stores located in California.

## IV. Class Action Allegations as to Consumer Claims

23. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2) and/or (c)(4), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all other California citizens similarly situated.

24. Plaintiffs seek to represent the following class:

> All citizens of California who have purchased the Always Discounted Products in California (the "California Consumer Class").[1]

25. Excluded from the Class is Defendant and any of its affiliates, parents, subsidiaries, officers, directors, employees, successors, or assignees; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend the California Consumer Class definition as appropriate during the course of this litigation.

26. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

---

[1] For purposes of this section, "Class" refers to the "California Consumer Class."

27. **Numerosity — Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiffs are informed and believe that there are not less than one thousand members of the Class, the precise number of Class Members is unknown to Plaintiffs, but may be ascertained from Hobby Lobby's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

28. **Commonality and Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. whether the Always Discounted Products are ever sold by Hobby Lobby at the alleged "marked price";

b. whether Hobby Lobby knew or should have known that its Fake Discount Pricing Scheme violated California and/or federal law;

c. whether Hobby Lobby had a duty to disclose the fact that no basis exists for the alleged "marked price";

d. whether any retailer offers any of the Always Discounted Products at the Hobby Lobby "marked price" price point;

e. whether Hobby Lobby conceals from consumers the true nature of the discount;

f. whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g. whether Plaintiffs and the Class members are entitled to damages;

h. whether Hobby Lobby was unjustly enriched through the sale of the Always Discounted Products; and

i. whether Hobby Lobby should cease advertising the Always Discounted Products at the "discounted" amounts.

29. **Typicality — Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other California Consumer Class members' claims because Plaintiffs and the Class members purchased the Always Discounted Products at the discounted rate deceptively marketed

by Hobby Lobby. Neither the Plaintiffs nor the other Class Members were aware that Hobby Lobby's stated discounts were false and that the marked price was not a legitimate price that the Always Discounted Products had been sold at. Plaintiffs and the other members suffered damages as a direct proximate result of the same wrongful practices in which Hobby Lobby engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

30. **Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).** Each Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class that she seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.

31. **Superiority — Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Hobby Lobby, so it would be impracticable for Class members to individually seek redress for Hobby Lobby's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Because of the relatively small size of the individual Class members' claims (compared to the cost of litigation), it is likely that only a few Class members could afford to seek legal redress for Hobby Lobby's misconduct. Absent a class action, Class members will continue to incur damages, and Hobby Lobby's misconduct will continue without remedy. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment

of common questions of law and fact would be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

32. **Ascertainability**. For purposes of Rule 23(b)(3) certification, members of each Class can be identified through objective criteria. Hobby Lobby keeps records of its sales and customers that can be used to identify Class Members and disseminate notice in accordance with due process requirements.

33. **Declaratory and Injunctive Relief — Federal Rule of Civil Procedure 23(b)(2).** Hobby Lobby has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

## V. Claims for Relief

### COUNT I
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF'L CODE § 17500 *ET SEQ*
### (By Plaintiffs individually and for the California Consumer Class)

34. Plaintiffs incorporate the preceding and subsequent allegations as if set forth fully herein.

35. The California False Advertising Law, codified at California Business & Professions Code section 17500 *et seq.*, (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement concerning that . . . personal property . . . which is the untrue or misleading, and which is known, or which by the exercise of reasonable car should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

36. Additionally, the FAL provides, in relevant part, that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

37. Hobby Lobby has violated the FAL through its Fake Discount Pricing Scheme. Specifically, Hobby Lobby makes false or misleading statements that it is providing the Always Discounted Products at a discount against a fake "marked price" that Hobby Lobby never or rarely uses and that no other retailer uses on a regular or routine basis.

38. Hobby Lobby rarely, if ever, offered the Always Discounted Products at a non-discounted price within the three months immediately preceding the publication of the advertisements.

39. Hobby Lobby did not clearly, exactly, and conspicuously state in the advertisements the date on which the alleged former price actually prevailed.

40. Hobby Lobby engaged in this deceptive conduct with the intent to dispose of personal property, including the intent to increase the sale of the Always Discounted Products.

41. Hobby Lobby knew or reasonably should have known that prices they included on their products were untrue or misleading.

42. Hobby Lobby's Fake Discount Pricing Scheme was likely to deceive members of the public. It is likely that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be (or would have been) misled.

43. As a direct and proximate result of Hobby Lobby's misleading and false advertisement, Plaintiffs and similarly situated Class members suffered injury in fact and sustained damages in an amount to be determined at trial.

44. Plaintiffs request that the Court compensate Plaintiffs and all Class Members, restore to Plaintiffs and Class Members any money Hobby Lobby acquired by false advertising

(including restitution or disgorgement), and enjoin Defendant from continuing its false and misleading advertising practices.

45. Plaintiffs, individually and for the California Consumer Class, seek all damages permitted by law, in an amount to be proven at trial.

46. Plaintiffs, individually and on behalf of the California Consumer Class, seek an injunction preventing Hobby Lobby from continuing to mark the Always Discounted Products as being on "sale" or offered at a "discount" when in fact there is no sale or discount being applied by Hobby Lobby.

## COUNT II
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)
**(By Plaintiffs individually and for the California Consumer Class)**

47. Plaintiffs incorporate the preceding and subsequent allegations as if set forth fully herein.

48. Under the California Unfair Competition Law (the "California UCL"), a plaintiff can bring an action individually and as a class to enjoin and to seek restitution for unfair competition. (*See* Ca. Bus. & Prof. § 17200 *et seq.*).

49. The California UCL defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by Chapter 1 of the Part 3 of the Division 7 of the Business and Professions Code." (Cal. Bus. & Prof. § 17200.)

50. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats those violations, when committed pursuant to a business activity, as unlawful practices independently actionable under the UCL.

51. Plaintiffs are "persons" under the UCL, § 17021.

52. Defendant is a "person" under the UCL, § 17021.

53. Under § 17203, a court may enjoin "any person performing or proposing to perform an act of unfair competition . . . ." Under that subsection, courts are authorized to "make such orders as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

54. Under the UCL, courts can order restitution without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice.

55. The UCL encompasses not just advertisements that have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.

56. Under the UCL, an action can be brought by any person acting for the interests of themselves or the general public.

57. Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL. This includes violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, Cal. Bus. & Prof. Code §§ 17500 and 17501, and Cal. Civil Code §§ 1770(a)(9) and (a)(13).

58. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false pricing schemes similar to the one employed by Defendant are a deceptive practice under the FTCA.

59. As explained below, Defendant's conduct also violates California false advertising laws, and the Consumer Legal Remedies Act.

60. Also, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

61. Defendant's conduct also constitutes an "unfair" business act or practice. The Fake Discount Price Scheme offered false discounts or false comparisons. Defendant's acts or practices

violated established public policy. They also constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

62. The harm to Plaintiffs and Class Members outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

63. A business act is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

64. Here, members of the public are likely to be deceived by Defendant's conduct.

65. Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Always Discounted Products were untrue and misleading.

66. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members suffered injury in fact and lost money or property.

67. Plaintiffs seek restitution and disgorgement of all money received by Defendants through the conduct described above.

68. Plaintiffs also seek a temporary, preliminary, or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein.

## COUNT III
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
**Cal. Civ. Code §§ 1750-1785 (the "CLRA")**
**(By Plaintiffs Individually and for the California Consumer Class)**

69. Plaintiffs incorporate the preceding and subsequent allegations as if set forth fully herein.

70. This count is brought by Plaintiffs Nicole Loza and Lorraine Romero individually and for the California Consumer Class.

71. The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 et seq. (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services

to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

72. Plaintiffs and members of the California Consumer Class are consumers who purchased Defendant's products for personal, family, or household purposes. Accordingly, Plaintiffs and members of the California Consumer Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

73. Defendant's sale of its Always Discounted Products to Plaintiffs and the Class were "transactions" within the meaning of California Civil Code section 1761(e).

74. The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

75. At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(c).

76. At all relevant times, Plaintiffs' purchases of Defendant's products, and the purchases by other California Consumer Class members, constituted "transactions," as that term is defined in Cal. Civ. Code § 1761 (e).

77. Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Defendant's products: (a) Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and (b) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13)).

78. Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Always Discounted Products are worth and are ordinarily offered at higher fictitious prices or are offered at fictitious "% off" sale prices.

79. As to § 1770(a)(9), Defendant advertised and represented its Always Discounted Products with the "intent not to sell" them as advertised because the false prices advertised in

connection with products offered misled and continue to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher prices for some reasonably substantial period of time.

80. As to section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendant's Always Discounted Products were rarely, if ever, previously offered for sale and/or sold at the higher price for a reasonably substantial period of time.

81. Pursuant to California Civil Code section 1782(a), Plaintiffs' counsel will notify Defendant in writing by registered mail, return receipt requested, to the place where the transaction occurred or to Defendant's principal place of business within California, of the particular violations of Civil Code section 1770 and demand that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to take necessary and appropriate action to rectify their violations of the CLRA within thirty (30) days of Plaintiffs' notice, Plaintiffs will amend this Complaint to seek actual, punitive, and statutory damages as appropriate against Defendant under the CLRA. At this time, Plaintiffs seek an injunction for Defendant's violation of the CLRA to enjoin Defendant's methods, acts, and practices of deceiving customers through their false and misleading pricing scheme as outlined above. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

82. Plaintiffs and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiffs and members of the Class would not have purchased the Always Discounted Products on the same terms if they had known the true facts; and (b) Plaintiffs and members of the Class paid a price premium due to the mislabeling of Defendant's Always Discounted Products.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiffs Individually and for the California Consumer Class)**

83. Plaintiffs incorporate the preceding and subsequent allegations as if set forth fully herein.

84. Defendant has benefitted from selling the Always Discounted Products at fake discounted prices.

85. Defendant has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

86. It is inequitable and unconscionable for Defendant to retain these benefits.

87. Because Defendant concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Always Discounted Products and did not benefit from – and instead have been harmed by – Defendant's misconduct.

88. Defendant knowingly accepted the unjust benefits of its wrongful conduct.

89. As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the California Consumer Class in an amount to be proven at trial.

## VI. Relief Requested

Accordingly, Plaintiffs, individually and for the other members of the California Consumer Class, respectfully request that the Court enter judgment in their favor and against Hobby Lobby as follows:

1. An order certifying the proposed Class under Rules 23(b)(2), 23(b)(3), or 23(c)(4), and designating Nicole Loza and Lorraine Romero as named representatives of the California Consumer Class, and designating the undersigned as Class Counsel;
2. Declaratory relief, including a declaration that Hobby Lobby's Fake Discount Pricing Scheme violates the CLRA, the UCL, and the FAL;

3. Injunctive relief;
4. Equitable relief, including but not limited to disgorgement and restitution;
5. Compensatory, exemplary, statutory, actual, and punitive damages to the extent allowed by law and proven at trial;
6. Attorneys' fees and costs;
7. Pre-judgment and post-judgment interest, as provided by law; and
8. Such other relief as may be appropriate under the circumstances.

**VII. <u>Demand for Jury Trial</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable, except for the issue of attorney's fees and costs.

DATED: November 11, 2024

Respectfully submitted,

*<u>/s/ Stephen R. Basser</u>*

**BARRACK RODOS & BACINE**
Stephen R. Basser
E-mail: sbasser@barrack.com
Samuel M. Ward
E-mail: sward@barrack.com
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
Email: sbasser@barrack.com
sward@barrack.com

Benjamin A. Gastel *
Joe P. Leniski, Jr. *
Anthony Orlandi *
**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL PLLC**
The Freedom Center
223 Rosa Parks Avenue, Suite 300
Nashville, Tennessee 37203
Telephone: (615) 800-6225
Email: <u>ben@hsglawgroup.com</u>
<u>joey@hsglawgroup.com</u>
<u>tony@hsglawgroup.com</u>

Matthew D. Alison (Additional Counsel for Plaintiffs Appear on Signature Page)

*
**INDIAN AND ENVIRONMENTAL LAW GROUP, PLLC**
233 S. Detroit Ave. Suite 200
Tulsa, OK 74120
Telephone: (918) 347-6169
Email: matthew@iaelaw.com

*Attorneys for Plaintiffs*

**Pro hac vice* Application forthcoming