UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE LOZA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOBBY LOBBY STORES, INC., <br><br> Defendant. | Case No. 24-cv-07861-AMO <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. No. 45 |

This is a putative false advertising class action.  Before the Court is Defendant Hobby Lobby Stores, Inc.'s motion to compel arbitration.  Having read the parties' papers and carefully considered their arguments therein, as well as the relevant legal authority, and good cause appearing, the Court **SEVERS** the forum selection clause and **GRANTS** the motion for the following reasons.

## BACKGROUND

Plaintiff Kymorea Johnson is one of five named plaintiffs in this action.  Hobby Lobby moves to compel to arbitration only Johnson's claims stemming from her online purchase.  Dkt. No. 45 at 8.  Johnson alleges that Hobby Lobby's advertising is deceptive because its retail stores and www.hobbylobby.com ("the Site") advertise discounts or sale prices for certain products, when the challenged products are always sold at the allegedly discounted price or are on sale so frequently that the sale price is effectively market price.  Second Amended Complaint, Dkt. No. 44 ¶¶ 40-48 ("SAC").

Johnson made online purchases from the Site on November 8, 2023.  Dkt. No. 44 ¶¶ 143, 146, 149; Declaration of Jennifer Ogle, Dkt. No. 45-1 ("Ogle Decl.") ¶ 5.  Johnson completed her purchases using the Site's "Secure Checkout" process.  Ogle Decl. ¶ 7.  To complete the Secure Checkout process, Hobby Lobby required Johnson to navigate a checkout screen that contained a

United States District Court<br>Northern District of California

United States District Court
Northern District of California

bright blue hyperlink to Hobby Lobby's then-current Terms and Conditions.  *Id.* ¶ 8.  The checkout screen stated "[b]y placing your order, you agree to Hobby Lobby's Privacy Policy and Terms and Conditions."  *Id.*  The notice was located below the "Place Order" button, which had to be pressed to complete a purchase.  *Id.*  The Terms and Conditions were hyperlinked, and clicking on them took users to a page containing the then-current Terms and Conditions.  *Id.* ¶ 9.  Johnson was presented with the notice and clicked the "Place Order" button to complete her online purchase.  *Id.* ¶ 10.

**REVIEW YOUR ORDER**

Your order has not yet been placed. Verify your shipping address is correct and confirm below to place your order.

Need help? Contact us and be sure to reference your cart number: **51740009**

**Place Order: $10.12**

By placing your order, you agree to Hobby Lobby's Privacy Policy and Terms and Conditions

On November 8, 2023, when Johnson made her online purchase, the Terms and Conditions hyperlink included both Hobby Lobby's Terms of Use and Terms of Sale.  Ogle Decl., Ex. 1.  The first section of the Terms of Sale read in bold, all caps, "**PLEASE READ THE TERMS OF USE CAREFULLY.  IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, INCLUDING A REQUIREMENT THAT DISPUTES BETWEEN YOU AND HOBBY LOBBY BE RESOLVED THROUGH ARBITRATION ON AN INDIVIDUAL BASIS.**"  *Id.*

Your purchase of Items through the Site is also subject to the HobbyLobby.com Terms of Use and Hobby Lobby Privacy Policy, both of which are incorporated in their entirety into these Terms by this reference. In the event of a conflict between the Terms of Use and these Terms, these Terms shall prevail. **PLEASE READ THE TERMS OF USE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, INCLUDING A REQUIREMENT THAT DISPUTES BETWEEN YOU AND HOBBY LOBBY BE RESOLVED THROUGH ARBITRATION ON AN INDIVIDUAL BASIS.**

The Terms of Use contained a paragraph requiring the parties to arbitrate certain disputes

*Id.* This paragraph appeared in larger font than the surrounding text. *Id.* The paragraph stated "You and Hobby Lobby agree that all claims, legal proceedings or litigation arising in connection with the Site will be brought solely before an arbitrator in Oklahoma County, Oklahoma and hereby irrevocably submit to, and waive any objection to arbitration." *Id.*

## 18. Governing Law and Dispute Resolution

These Terms shall be governed by and interpreted in accordance with the laws of Oklahoma, without regard to its principles regarding conflicts of law or your state or country of residence. You and Hobby Lobby agree that all claims, legal proceedings or litigation arising in connection with the Site will be brought solely before an arbitrator in Oklahoma County, Oklahoma and hereby irrevocably submit to, and waive any objection to arbitration.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "[A]rbitration agreements [are] on an equal footing with other contracts," and therefore, a court must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). In adjudicating a motion to compel arbitration, "a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' " *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Further, the court applies a summary judgment standard to resolve the motion. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). To prevail under this standard, Hobby Lobby must show there is no genuine issue of fact as to the formation of an agreement to arbitrate between Johnson and Hobby Lobby. *See id.*

3

United States District Court
Northern District of California

**DISCUSSION**

The instant motion presents three issues.  First, whether a valid agreement to arbitrate existed between Johnson and Hobby Lobby.  Second, whether the agreement is unconscionable.  And third, whether the instant dispute is within the scope of the arbitration agreement.  The Court addresses each in turn.

**I.      CONTRACT FORMATION**

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).  Here, the parties do not dispute California law applies.  Under California law, a contract is formed when the parties "manifest their mutual assent to the terms of the agreement," which can be done through written or spoken word as well as conduct.  *Id.*  "These elemental principles of contract formation apply with equal force to contracts formed online.  Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 855-56.

"In California, internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.' " *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021)).  Relevant here, "[s]ign-in wrap agreements occur when 'a website notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up.' " *See In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 947 (N.D. Cal. 2021) (citations omitted).  In this case, Hobby Lobby provided Johnson with links to its Terms of Use and Terms of Sale at checkout.  Ogle Decl. ¶ 8.  It also notified Johnson that "[b]y placing your order, you agree to Hobby Lobby's Privacy Policy and Terms and Conditions." *Id.*  Accordingly, and as both parties acknowledge, Dkt. No. 49 at 7 & Dkt. No. 52 at 8, this constitutes "sign-in wrap."

Given the presence of sign-in wrap, Hobby Lobby argues that a valid arbitration agreement

existed because Johnson was on inquiry notice.[1]  *See* Dkt. No. 45 at 12-13 (citing *Keebaugh*, 100 F.4th at 1018).  *Keebaugh* provides that a sign-in wrap arbitration agreement is enforceable when "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Id.* (quoting *Berman*, 30 F.4th at 856).  The Court proceeds to analyze these two requirements.

**A.  Reasonably Conspicuous Notice**

Visual conspicuousness is a "fact-intensive" inquiry that requires the Court to consider the "totality of the circumstances."  *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025).  In interpreting California law, the Ninth Circuit has highlighted "certain factors relevant to [the] visual analysis of webpages and hyperlinks, such as the location of the advisal on the webpage or the font size, color, and contrast (against the page's background)."  *Id.*  "[T]here is no bright-line test for finding that a particular design element is adequate in every circumstance."  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025).  "At bottom, when visually analyzing the conspicuousness of an advisal and any hyperlinks, courts must be tuned to the expectations of a reasonably prudent internet user."  *Godun*, 135 F.4th at 710 (citation omitted).

Before completing her purchase, Hobby Lobby's website presented Johnson with the Site's Secure Checkout screen, which contained a white background with contrasting black text stating that, "[b]y placing your order, you agree to Hobby Lobby's Privacy Policy and Terms and Conditions."  Ogle Decl. ¶ 8.  This notice was displayed directly beneath the screen's "Place Order" button.  *Id.*  The Secure Checkout screen underlined the Terms and Conditions and Privacy Policy hyperlinks, the hyperlinks are in contrasting blue text, and the screen contained no

---

[1] Johnson argues she did not have "actual notice" of the arbitration agreement because she "never clicked on any hyperlink containing such terms nor was she required to in order to complete her purchase."  Dkt. No. 49 at 8.  But Johnson cites no case law indicating actual notice is required to enforce an arbitration agreement.  Johnson's contention that she never read the arbitration agreement does not alter the Court's analysis because "[a] cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement."  *Rivas v. CVS Pharm.*, No. 3:25-cv-03392-WHO, 2025 WL 2076634, at *2 (N.D. Cal. July 23, 2025) (enforcing arbitration agreement as to plaintiff who "was not aware of what arbitration was at the time" and "[did] not recall" assenting to it).  Johnson's purported failure to review the agreement does not serve as a defense to the contract's formation.

United States District Court
Northern District of California

extraneous text to distract users from the advisal. *Id.* This provided reasonably conspicuous notice to Johnson of Hobby Lobby's Terms. *See, e.g., Lee v. Ticketmaster L.L.C.*, No. 3:18-cv-05987-VC, 2019 WL 9096442, at \*1 (N.D. Cal. Apr. 1, 2019), aff'd, 817 F. App'x 393 (9th Cir. 2020) (enforcing arbitration agreement because the defendant "provided notice of the terms of use adjacent to the 'Place Order' button, included a hyperlink to the terms in a contrasting color, and informed the user that 'continuing past this page' (i.e., placing an order) would indicate assent to the terms").

Johnson contends that sign-in wrap is generally disfavored in the Ninth Circuit. Dkt. No. 49 at 7. But the Ninth Circuit has found sign-in wrap agreements permissible where the website provides conspicuous notice and requires the consumer to take action in order to manifest their assent. *See Keebaugh*, 100 F.4th at 1014.[2] Thus, the Court does not give credence to this contention because the Ninth Circuit has expressly found sign-in wrap agreements permissible in instances like this one.

Johnson also disputes the conspicuousness of the notice. Dkt. No. 49 at 13-15 (citing *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025)). In *Chabolla*, the court found plaintiff did not receive conspicuous notice where terms of use were presented far below the "continue" button "on the periphery of where a user intending to use their email would be looking" or, where they were presented more centrally, plaintiff "had no means of manifesting her assent to those terms on those screens." *Chabolla*, 129 F.4th at 1157-58. The same is not true here, as Hobby Lobby presented its terms directly below the "Place Order" button and Johnson manifested her assent on the same screen by clicking the "Place Order" button when the notice explicitly stated "[b]y placing your order, you agree to Hobby Lobby's <u>Privacy Policy</u> and <u>Terms and Conditions</u>." Ogle Decl. ¶ 8.

The instant case is more similar to *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517

---

[2] Johnson cites to *Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1117 (N.D. Cal. 2024), but the Ninth Circuit reversed this decision and explicitly rejected the reasoning on which Johnson relies. *See Massel v. Successfulmatch.com*, No. 24-1870, 2025 WL 2452371, at \*1 (9th Cir. Aug. 26, 2025) (holding that the district court erred in denying a motion to compel arbitration because it "solely focus[ed] on the color and design of the hyperlink in holding that [defendant] did not provide reasonably conspicuous notice of the agreement and its arbitration provision.").

United States District Court
Northern District of California

(9th Cir. 2023). In *Oberstein*, the court found that consumers received conspicuous notice where defendant displayed the notice directly above or below the action button and distinguished the terms of use hyperlink "from surrounding text in bright blue font, making its presence readily apparent." 60 F.4th at 516. The same is true here, where Hobby Lobby hyperlinked the terms of use directly below the "Place Order" button in bright blue font. Ogle Decl. ¶ 8.

Johnson additionally asserts that Hobby Lobby's notice is inconspicuous because Hobby Lobby presented it on a single screen (as opposed to multiple times throughout the check-out flow) and because other screens in the check-out flow contain Google's privacy policy and terms of service. Dkt. No. 49 at 11. The Court is not convinced that these facts render Hobby Lobby's notice inconspicuous to a reasonable user. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) (finding notice on a single screen sufficiently conspicuous).

Johnson further argues that the arbitration language was "buried within the hyperlinked Terms of Use" because consumers must scroll "several screens down" to "find a short paragraph mandating arbitration." Dkt. No. 49 at 9. She contends that the arbitration language "was not displayed in bold print, capitalized letters, or text of a different color to emphasize its importance" and that there was not "a message at the top of the Terms of Use alerting users to the arbitration terms nestled deep within." *Id.* First, Johnson cites no case law to support the contention that arbitration language must be set apart from other language in a contract. *See* Dkt. No. 49 at 9. Second, the first provision of the Terms of Sale contained bold, all-capitalized language explicitly stating that the Terms of Use contained an arbitration agreement. Ogle Decl., Ex. 1. This language, combined with the screen linking to the Terms of Use and Terms of Sale, provided reasonably conspicuous notice. *See Keebaugh*, 100 F.4th at 1020-21.

Finally, Johnson argues that she should not be held to the arbitration agreement because of the context of her transaction with Hobby Lobby. Dkt. No. 49 at 9. Courts must take into account the context of a transaction in determining whether notice was reasonably conspicuous. *See Chabolla*, 129 F.4th at 1155. Indeed, "the full context of the transaction is critical to determining whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms." *Sellers*, 73 Cal. App. 5th at 479. When cases involve one-off transactions,

7

"reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print." *Berman*, 30 F.4th at 869 (Baker, J., concurring). But this does not doom Hobby Lobby's motion. "[T]he context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous." *Keebaugh*, 100 F.4th at 1019. While Johnson's purchase with Hobby Lobby was a one-off transaction and thus "there [wa]s less reason for her to expect a continued relationship beyond the purchase[,]" *Chabolla*, 129 F.4th at 1155, Hobby Lobby displayed the notice in a "format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515 (citation and quotation omitted).

**B. Manifestation of Assent**

The second step in this contract formation framework requires the Court "to consider whether any action taken by the internet user—such as clicking a button or checking a box— 'unambiguously manifest[ed] his or her assent' to proposed contractual terms." *Godun*, 135 F.4th at 710 (citation omitted). Manifestation of assent occurs "where an internet user is 'explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.' " *Id.* at 710-11 (quoting *Berman*, 30 F.4th at 857).

Here, the Hobby Lobby notice at checkout states "[b]y placing your order, you agree to Hobby Lobby's Privacy Policy and Terms and Conditions." Ogle Decl. ¶ 8. This language parallels the language approved by the Ninth Circuit in *Berman. See* 30 F.4th at 858 ("This notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.' "). Johnson has presented no evidence that she did not click the button to place her order. Therefore, the Court finds no dispute of fact as to her manifestation of assent.

In sum, the Court concludes that a valid agreement to arbitrate existed between Johnson and Hobby Lobby.

**II.    UNCONSCIONABILITY**

Johnson argues that the arbitration agreement cannot be enforced because it is unconscionable. Dkt. No. 49 at 19. Finding an agreement unconscionable requires "both a

8

procedural and a substantive element, with the former focusing on oppression or surprise due to unequal bargaining power, [and] the latter on overly harsh or one-sided results." *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotations and citation omitted). These factors need not be present to the same degree but are considered on a "sliding scale" relative to each other. *Davis v. Kozak*, 53 Cal. App. 5th 897, 905 (2020). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (2010) (quotations omitted); *see also OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125-26 (2019) (describing "sliding scale" where "the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required."). Johnson "bears the burden of establishing both types of unconscionability." *Streedharan v. Stanley Indus. & Auto., LLC*, No. 22-55999, 2023 WL 9067587, at *1 (9th Cir. Jan. 4, 2023).

### A. Procedural Unconscionability

Johnson contends that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion. Dkt. No. 49 at 19. Hobby Lobby does not dispute that the arbitration agreement is a contract of adhesion. *See* Dkt. No. 52 at 16. But adhesion contracts are "indispensable facts of modern life that are generally enforced" and Johnson having "had no opportunity to negotiate the terms of service standing alone, is insufficient to plead a viable unconscionability claim." *Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 379 (Cal. Ct. App. 2021); *see also In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 953 (N.D. Cal. 2021) (enforcing arbitration provision in a sign-in wrap agreement where the "terms were unilaterally imposed" by defendant). Accordingly, Johnson has established a minimal degree of procedural unconscionability. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 353 P.3d 741 (2015) (holding "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability.").

### B. Substantive Unconscionability

Johnson avers that the arbitration agreement is substantively unconscionable because it

9

requires California consumers to arbitrate in Oklahoma County, Oklahoma.  Dkt. No. 49 at 20. "[S]tate and federal courts in California have found arbitration clauses that require parties to travel across the country to arbitrate their claims unconscionable."  *McFaddin v. E.A. Renfroe & Co., Inc.*, No. EDCV1402369VAPSPX, 2015 WL 13774236, at *8 (C.D. Cal. Feb. 10, 2015).  Here, the agreement requires arbitration take place in Oklahoma, where Hobby Lobby is headquartered, even though Johnson lives in California.  Thus, the provision requiring arbitration to take place in Oklahoma County, Oklahoma is substantively unconscionable.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (finding provision requiring plaintiff to arbitrate in Boston unconscionable where Boston was "only a few miles away from [defendant's] headquarters . . . but three thousand miles away from [plaintiff's] home.").

However, "[d]istrict courts often sever unconscionable forum selection and choice of law provisions from arbitration agreements so long as the provisions do not impact the central purposes of the contract and no other unlawful terms taint the arbitration agreement with illegality."  *Siert v. Spiffy Franchising, LLC.*, 758 F. Supp. 3d 1142, 1150 (N.D. Cal. 2024).  Here, the Court finds that the forum selection clause can be severed "without disrupting the agreement's chief objective—to arbitrate disputes arising from the agreement."  *Id.*  Thus, the Court severs the forum selection clause and proceeds with its enforceability analysis for the remainder of the arbitration agreement.

### III.   SCOPE OF ARBITRATION AGREEMENT

Because the Court determined that Hobby Lobby carried its burden of proving that a valid arbitration agreement exists, and that it can be enforced, the Court must next determine whether the arbitration agreement encompasses the dispute at issue.  *Lim*, 8 F.4th at 999.  The arbitration agreement provides that "all claims . . . arising in connection with the Site will be brought solely before an arbitrator."  Ogle Decl., Ex. 1.  Johnson argues that her claims should not be submitted to arbitration because they are "unrelated to the technical use of the site" as they "concern deceptive 'strike-through' pricing and misleading discounts[.]"  Dkt. No. 49 at 20 (citing *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847-48 (9th Cir. 2013)).  *Rajagopalan* is inapposite.  It held that an entity could not compel arbitration "on the basis of an arbitration clause

in a contract to which it was not a party." 718 F.3d at 845. Johnson does not contend that Hobby Lobby is not a party to the arbitration agreement. Further, Johnson provides no support for the contention that the arbitration clause applies only to "technical use of the site" nor does she explain what "technical use" means. Hobby Lobby contends that the dispute is within the scope of the agreement because the phrase "arising in connection with" should be interpreted broadly. Dkt. No. 52 at 21 (citing *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. 3:10-cv-05277-WHA, 2011 WL 1044241, at *2 (N.D. Cal. Mar. 22, 2011) (holding that "[e]very court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly" and compelling plaintiff to arbitration)). Plaintiff's arbitrable claims are admittedly based on her purchase through the Site of "items [that] appeared on Hobby Lobby's website[.]" SAC ¶ 149. Because the Court is to construe the "arising in connection with the Site" language broadly, Johnson's claims based on her purchases on Hobby Lobby's website are within the scope of the arbitration agreement.

## CONCLUSION

For the reasons stated above, the Court **SEVERS** the forum selection provision of the arbitration agreement and **GRANTS** Hobby Lobby's motion to compel arbitration. Johnson is compelled to arbitrate the claims arising from her online purchase, and these claims are **STAYED**, pending the outcome of arbitration. The Court limits its stay to Johnson's claims arising from her online purchase.

**IT IS SO ORDERED.**

Dated: June 24, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11